THE CENTRAL BRANCH UNION PACIFIC RAILROAD COMPANY v. BOLEY S. PATE.

VERDICT AND JUDGMENT, *When Sustained.* In an action brought by the owner of a colt against a railroad company to recover the value of such animal, alleged to have been killed on the line of its road, in the operation of the railroad, the testimony showed that the colt was seen alive on the morning of October 8th, 1877, at a place where it usually ran, two or three hundred feet from the railroad track, which was unfenced; that at 11 A. M. of said day a train passed east at said place over the road; that on October 9th, 1877, the colt was found dead and buried fifteen or twenty feet from the track of such railroad; that at this time hair could be seen on the ends of the ties for about two rods, which corresponded with the color of the hair on the colt; and that from the marks along the ends of the ties and between the iron rails, it looked as if an animal had been dragged along the road in an easterly direction. No evidence was introduced to contradict this testimony, or explain these circumstances. *Held,* That after the verdict of a jury has been rendered in favor of the plaintiff, and the district court has approved the verdict by refusing to set it aside and grant a new trial, the supreme court will not reverse the judgment of the district court, and order a new trial to be granted on the ground that there is not sufficient proof that the colt was killed on the line of the road, or in the operation of such railway.

*Error from Atchison District Court.*

ACTION, brought by *Pate,* against the *C. B. U. P. Rld. Co.,* to recover the sum of $35, the value of a colt alleged to have been killed by said defendant while operating its rail-

way. Trial at the June Term, 1877, of the district court, and verdict and judgment for the plaintiff. New trial refused, and the defendant brings the case to this court on error.

*Everest & Waggener*, for plaintiff.

*Smith & Solomon*, for defendant.

The opinion of the court was delivered by

HORTON, C. J.: This was an action brought by the defendant in error against the plaintiff in error in the district court of Atchison county to recover the sum of $35, the value of a colt alleged to have been killed on the line of the road of the plaintiff in error, on or about the 8th day of October, 1877, while in the operation of its said railroad. The case was tried in the court below on the 20th day of June, 1878, at the June term of said court, before a jury duly impanneled to try the same. After the plaintiff in the court below had rested his case, the defendant in that court, the railroad company, filed its demurrer to the evidence, which was overruled; and without the introduction of further evidence the case was submitted to the jury, who returned a verdict for the plaintiff for the sum of $32.50, the value of the colt, and $25 attorney's fees. The railroad company thereupon filed its motion for a new trial, which was overruled by the court, and judgment entered on the verdict for the defendant in error. The plaintiff in error now seeks a reversal of said judgment.

It is conceded that the defendant in error was the owner of the animal in controversy, and that the line of the railroad company's road was unfenced; but it is claimed that there was not sufficient proof that the animal, if killed, came to its death on the line of the road of plaintiff in error, by the engine or cars of said company, or in any other manner whatever in operating such railway. The testimony upon these disputed points was as follows:

The plaintiff was then called and sworn as a witness, and testified as follows:

Q. You are the plaintiff in this action, Mr. Pate? A. I am; yes, sir.

Q. Please state if on the 8th day of October you were the owner of one iron-gray colt? A. I was. There is a little dispute about the color of the colt; some claimed that it was a black colt, but I regarded it as an iron-gray.

Q. Where do you reside, Mr. Pate? A. Kapioma township, Atchison county, Kansas.

Q. How old was your colt, Mr. Pate, on or about the 8th day of October, 1877? A. Something near six months old.

Q. What sized colt was it? A. Oh, the colt was what I called a good-sized colt.

Q. What was its color? A. The colt was, I should say, a very dark iron-gray. Some people would call it black, but by observing closely you could see the gray hairs.

Q. Where was that colt on or about the 8th day of October, A. D. 1877? A. I can't tell you exactly where it was all day, because I was not at home all day.

Q. Where was it the last time you saw it? A. About 10 o'clock in the morning I was going to Muscotah. Just before I started away I saw the colt at my place, where it was usually running, on the outside of the bars.

Q. How far from the track of the Central Branch? A. I suppose somewhere about 200 or 300 feet from the track.

Q. What railroad runs along there? A. Central Branch.

Q. The Central Branch Union Pacific Railroad? A. Yes, sir.

Q. This colt was within 200 or 300 feet of the track? A. Yes, sir.

Q. Where did you go on that day? A. To Muscotah.

Q. I will ask you if you know of a train on the Central Branch Union Pacific Railroad passing along there that day? A. Something near 11 o'clock, I guess, after I had left home going to Muscotah, I heard the cars pass.

Q. Which way were they going? A. Going east.

Q. Did you ever see the colt after that at any time? A. I don't know whether I did or not; I can say I never saw it alive again.

Q. State what you did see. A. I saw a grave dug by the side of the railroad track, and a part of a colt that resembled my colt very much.

Q. How long was this after you went to Muscotah? A. Perhaps a week.

Q. Have you ever seen that colt alive since? A. I never have.

Q. Was this grave at or near any public crossing? A. No, sir.

Q. When you saw this colt buried, or a part of a colt buried, how far was that grave from the railroad track? A. Something near fifteen or twenty feet from the railroad track, I guess.

Also, *Nelson Simmons*, who being duly sworn, testified as follows, to wit:

Q. Mr. Simmons, where do you reside? A. In Grasshopper township, about three miles from Muscotah.

Q. How far do you reside from the plaintiff in this action? A. About a mile, to the best of my knowledge.

Q. How far from the railroad track of the Central Branch? A. About a mile, I should think.

Q. Were you living there on or about the 8th day of October, A. D. 1877? A. I was.

Q. I will ask you to state if, on or about this date, you saw a colt near that railroad track. A. I did; yes, sir.

Q. State where that colt was, and how you came to see it. A. The colt was lying by the side of the railroad track, buried. I was sent after to come and appraise the colt.

Q. Who was it sent after you? A. Mrs. Pate, wife of the plaintiff Boley Pate. We scratched a little dirt off the colt, and appraised it.

Q. What kind of a colt was it? A. A dark-colored colt.

Q. What was its size? A. Looked to be about a six-months'-old colt.

Q. Had you ever seen the colt before, Mr. Simmons? A. Yes, sir.

Q. Whose colt was that that was buried there? A. I think it was Mr. Pate's colt.

Q. How far was the colt from the side of the track? A. About 15 or 20 feet.

Q. Did you examine the track there? A. I did.

Q. What did you see there? A. I saw hair on one end of the ties; the hair corresponded with the color of the hair on the colt that was buried there, and I believe the rails I saw where it looked as if something had been dragged.

Q. How far did that extend? A. A rod and a half, I guess, to two rods.

Q. Can you tell which way the colt had been dragged? A. Yes, sir; east, I think.

Q. How could you tell that? A. By the tracks.

Q. Did you see anything else there that showed where the animal had been pushed along? A. I saw a place where it looked as if something had been pushed along that was caught by the foot.

Q. This mark looked as if the animal had been dragged east? A. Yes, sir.

Q. Was the place where the animal had been buried, the grave, east of these marks? A. Yes, sir.

Q. You say you saw hair along the track? A. Yes, sir.

Q. In how many different places? A. I can't say positively; in three or four places—probably more.

Q. Did the hair correspond with the color of the hair of the animal buried there? A. Yes, sir.

Also, *James Thomas*, who being duly sworn, testified as follows:

Q. Are you acquainted with the plaintiff? A. Yes, sir.

Q. Where do you reside? A. In Kapioma township, Atchison county, Kansas.

Q. How near do you reside to the plaintiff? A. About a quarter of a mile, I guess.

Q. Were you ever near the railroad near Pate's, on or about the 9th day of October? A. Yes, sir.

Q. What did you see there? Go on and state the whole thing. A. I saw a colt buried there.

Q. Go on and describe it. A. The colt I called a dark iron-gray colt; it was buried up in the ground there.

Q. Where was the grave situated? A. About fifteen or twenty feet north of the railroad track. The colt was covered up with dirt.

Q. What did you do? A. We took a hoe and dug off a little dirt until we could see the colt and see what kind of a colt it was.

Q. Well, whose colt was it? A. We thought it was Mr. Pate's colt.

Q. How long before you saw the colt there had you seen it alive? A. I think I saw it the morning Mr. Pate started to Muscotah.

Q. Did you ever see it more than once? A. I saw it almost every day.

Q. Have you ever seen Mr. Pate's colt alive since you saw that colt buried there? A. No, sir.

Q. What else did you see there, if anything? Did you

see anything on the track? A. I saw hair on the ends of the ties.

Q. What else, if anything? A. I saw where it looked as if an animal's foot had been caught and dragged along. That was in this county.

Q. Was there anything else that showed you that an animal had been dragged along there? Marks along the ends of the ties, and between the iron rails.

Q. What was the color of the hair on the ends of the ties? A. Dark iron-gray.

Q. How did it compare with the colt? A. Same color; some few gray hairs.

Q. How far along the track did the hair and those marks extend? A. About rod and a half.

Q. Could you tell from the looks of those marks there which way the animal had been dragged? A. It looked like it was east.

Q. Do you know what time the train passed there in the morning, then? A. I think about eleven o'clock. I noticed it several times passing close on to eleven o'clock.

Q. How far did you dig up this colt? A. We dug just so we could see the color of the colt.

Q. Did you recognize the colt as Mr. Pate's? A. I think it was the same colt.

Taking the whole evidence together, we think it is sufficient to make out a *prima facie* case that the colt in controversy was killed on the road of the plaintiff in error by the engine or cars of the company, or at least in some manner connected with the operation of the railroad. All the inferences are in that direction. The facts more naturally fit this hypothesis than any other; and this being a civil case, if there are conflicting hypotheses, the judgment must be for that for which there is a preponderance of proof. The preponderance of proof is certainly on the side of the defendant in error. In addition to the facts proved, the jury had the right to use the knowledge and experience they are supposed to possess in common with the generality of mankind in making up a verdict, and hence in this case they had the right, in view of the proximity of the colt to the railroad track on the morning of October 8th, to consider the probability of such

colt attempting to cross the track, or of straying thereon, and also its likelihood of being struck by the engine of the train going eastward at 11 A. M. of said day. Its death must be accounted for in some way, and the jury have applied the facts to the most reasonable theory. The district court has approved the verdict by refusing to set it aside and to grant a new trial, and, under the circumstances, this court will not reverse the judgment; therefore the judgment will be affirmed.

All the Justices concurring.